UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re:<br><br>LLS AMERICA, LLC,<br><br>　　　　　Debtor, | NO: 12-CV-488-RMP<br><br>Bankr. Case No. 09-06194-FPC11 |
| BRUCE P. KRIEGMAN, solely in his capacity as court-appointed Chapter 11 Trustee for LLS America, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DORIS NELSON and ADAM NELSON, and the marital community comprised thereof; et al.,<br><br>　　　　　Defendants. | Adv. Proc. No. 11-80285-FPC11<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

A bench trial was held on October 1, 2014.  Plaintiff was represented by Thomas Cochran and Daniel Gibbons from Witherspoon Kelly.  Pro se defendants Harold Johanson and Colt Johanson were not present.  Plaintiff stated that the pro

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 1

se defendants had been given notice of the trial and that they did not respond.  For reasons explained on the record and in a prior order, Plaintiff did not present evidence concerning any defendants other than Harold Johanson and Colt Johanson.  *See* ECF No. 91.

The Court heard witness testimony and, having reviewed the admitted exhibits and being fully informed, makes the following findings of fact and conclusions of law:

## PREVIOUS RULINGS

**1.    Ponzi Scheme and Insolvency**

On July 1, 2013, the Bankruptcy Court issued its Report and Recommendation Re Plaintiff's Motion for Partial Summary Judgment on Common Issues ("Report and Recommendation") recommending that the District Court grant the Trustee's Amended Motion for Partial Summary Judgment on two "Common Issues": (1) Debtor operated a Ponzi scheme; and (2) Debtor was insolvent at the time of its transfers to Defendants.  On August 19, 2013, this Court adopted the Bankruptcy Court's Report and Recommendation and entered an order granting the Trustee's Amended Motion for Partial Summary Judgment on the Common Issues ("Order Adopting Report and Recommendation").  *See* 2:11-cv-00357-RMP, ECF No. 92.  Therefore, this Court has determined that

Debtor operated a Ponzi scheme and was insolvent at the time of each of the transfers to Defendants.

All of the findings and conclusions set forth in the Report and Recommendation and the Order Adopting Report and Recommendation are incorporated by this reference and are the law of this case.

### 2. Omnibus Hearing for the Testimony of Charles B. Hall

On January 31, 2014, this Court entered its Order Granting Plaintiff's Motion for Omnibus Hearing. ECF No. 42. Pursuant to that Order, the court-appointed examiner, Mr. Charles B. Hall, testified at an Omnibus Hearing in open court commencing on February 25, 2014. His testimony consists of written direct examination testimony that was filed on or about February 17, 2014, and the oral testimony that he gave at the Omnibus Hearing. Mr. Hall was cross examined by several defense attorneys and by some pro se defendants. Mr. Hall's testimony at the Omnibus Hearing is part of the record in this adversary action.

## FINDINGS OF FACT

1. Debtor is the Little Loan Shoppe group of companies, which was formed originally in 1997. PO-1 at 11.

2. Debtor operated a Ponzi scheme, whereby investors' loans sometimes were used to pay other investors' promised returns on investments. PO-1 at 16.

3.      Over the course of its existence, Debtor acquired approximately $135.4 million in funds invested by individual lenders, documented by promissory notes promising interest in the range of 40% to 60% per annum.  PO-1 at 7 n.2, 15.

4.      Debtor accumulated payday loan bad debts of approximately $29 million, which were written off in 2009.  PO-1 at 41.

5.      Debtor was never profitable at any time during its existence, and at no time did it generate sufficient profits to pay the amounts due the lenders.  PO-1 at 16, 53.

6.      All of the transfers that the Trustee seeks to avoid were made within the period of September 1997 to July 21, 2009.  P-81; P-91.

7.      Indicia and characteristics of the Ponzi scheme present in this case include:

    a.    Proceeds received from new investors masked as profits from running a payday loan business; PO-1 at 16, 22;

    b.    Promise of a high rate of return, usually between 40% to as much as 60%, on the invested funds; PO-1 at 19;

    c.    Debtor paid commissions to third parties who solicited new lenders, typically 10% annually of the amount received from the new lender; PO-1 at 20-21;

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 4

      d.    Debtor solicited funds as loans evidenced by promissory notes but demonstrated a pattern of "rolling over" the promissory notes when due onto new notes instead of paying off the obligation; PO-1 at 26;

      e.    Debtor, throughout its history, made false and misleading statements to current and potential lenders; PO-1 at 53-54;

      f.    Debtor was insolvent from its inception to the filing of its bankruptcy; PO-1 at 67.

8. The court-appointed examiner, Charles B. Hall, by way of education, experience, and vocation, is qualified to analyze and review the legitimacy of an enterprise's operation and to detect a fraud based on Ponzi scheme operations.

9. Mr. Hall's expert opinion is credible.

10. Curtis Frye's testimony, which pertained to Debtor's record keeping and the accounting, is credible.

11. Harold Johanson is Doris Nelson's father. Colt Johanson is Doris Nelson's brother.

12. Harold Johanson received multiple payments from Debtor. *See* P-81. Plaintiff argued that Harold Johanson received a total of $7,762.66. However, a check offered in support of a $473.66 transfer to Harold Johanson was made payable to Andrea Barnett. P-81 at 5. Although a note on the bottom of the check states "Johanson," it is unclear whether the funds were intended for Harold

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 5

Johanson. The Court finds that evidence of this payment to Harold Johanson is insufficient. Therefore, the Court will not include this payment in its accounting.

13. Other payments to Harold Johanson are supported by checks that are payable to "Cash" and that indicate that they are "for H. Johanson." *See, e.g.*, P-81 at 3. The Court finds that Plaintiff offered sufficient evidence to establish that Harold Johanson received $6,122.34 in Canadian currency, shown by checks drawn on a Canadian bank, and $1,166.66 in United States currency, proven by the receipt for a cashier's check that Little Loan Shoppe America purchased from Bank of America. *See* P-81.

14. There is no evidence that Harold Johanson worked for Debtor in exchange for the transfers.

15. A demand letter written in May 2001 by Harold Johanson's attorney indicates that Debtor issued Harold Johanson promissory notes for a total of $20,000 and owed him $5,000 that he had advanced to Debtor. P-81 at 12. However, Mr. Frye testified that he could not find any evidence that Debtor had received anything in exchange for the payments to Harold Johanson. The Court finds that there is not sufficient evidence to show that Harold Johanson contributed funds to Debtor.

16. Colt Johanson was employed by Debtor. Chris Snyder, a former employee of Debtor's, testified that he had seen Colt Johanson sitting in front of a

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 6

computer at Debtor's place of business over a three-month period, although Mr. Snyder was unsure of the extent of Colt Johanson's work. Mr. Frye, who also worked for Debtor, indicated that he was not aware of anything of value that resulted from Colt Johanson's services to Debtor.

17. Evidence of payments to Colt Johanson includes W-2 wage and tax statements indicating that $21,983.17 in wages were reported for the years 2007 and 2008. P-91 at 1. Debtor's payroll records for the same period indicate that Colt Johanson was paid $18,158.99, which is roughly consistent with the amount of Colt Johanson's wages reported on the W-2 forms, after the withheld taxes are subtracted. *See* P-91 at 1, 2. Debtor also paid $2,568.06 for a truck purchased in Colt Johanson's name. P-91 at 4, 5. The evidence further reflects an additional $800.00 payment from Debtor to Colt Johanson, without any indication of whether the funds were transferred as payment for Colt Johanson's services to Debtor. *See* P-91 at 6.

18. Plaintiff also offered an accounting record as evidence of a $1,113.25 payment that Debtor made to Colt Johanson, apparently for wages. *See* P-91 at 3. However, the accounting record does not indicate the date of payment or whether the payment is reflected also in the other payroll records. The Court finds that Plaintiff has not offered sufficient evidence of this payment and excludes the payment from its accounting of transfers that Colt Johanson received from Debtor.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 7

19. There is no evidence that Colt Johanson invested funds in Debtor or was aware of Debtor's Ponzi scheme.

20. The following summarizes the evidence of transfers made to Harold Johanson:

    Transfers of $6,122.34 CAD
    Transfers of $1,166.66 USD

21. The following summarizes the evidence of transfers made to Colt Johanson:

| | |
|---|---|
| Wages net of taxes and withholdings | $18,158.99 USD |
| Member withdrawal | $800.00 USD |
| Partial payment for a truck | $2,568.06 USD |

22. Total transfers to Defendants are as follows:

- **Harold Johanson** for $6,122.34 CAD and $1,166.66 USD; and

- **Colt Johanson** for $21,527.05 USD

23. All transfers to Defendants were made with actual fraudulent intent to hinder, delay or defraud creditors and in furtherance of a Ponzi scheme.

24. All transfers were made to Defendants while Debtor was insolvent.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(d).

2. This Court has jurisdiction over Defendants.

3. This action was timely commenced.

1  4. At least one unsecured creditor existed who triggered the strong arm power of 11 U.S.C. § 544(b)(1) because the creditor did not and should not reasonably have discovered the fraudulent nature of Debtor's Ponzi scheme transfers within one year before the bankruptcy petition was filed. *See* 2:11-cv-00362-RMP, ECF No. 197.

5. Defendants are insiders of Debtor. *See* 11 U.S.C. § 101(31)(A) ("insider" includes a "relative of the debtor").

6. Washington State law governing fraudulent transfers applies.

7. Under the statutes relating to fraudulent transfers, 11 U.S.C. § 548 and RCW 19.40, *et seq.*, payments received from Debtor are recoverable from each Defendant by the Trustee, subject to the defense of good faith pursuant to 11 U.S.C. § 548(c) and RCW 19.40.081(a).

8. Transfers made in furtherance of a Ponzi scheme constitute actual fraud under the Bankruptcy Code and Washington's version of the Uniform Fraudulent Transfer Act (UFTA). *See* Bankr. Adv. Proc. No. 11-80299-FPC, ECF No. 378 at 21-25. "Where causes of action are brought under UFTA against Ponzi scheme investors, the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers . . . ." *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008).

9. A transferee of a fraudulent transfer may keep funds that it took for reasonably equivalent value and in good faith. *See* 11 U.S.C. § 548(c); RCW 19.40.081(a). As recipients of transfers that constitute actual fraud, the burden of proof in establishing the affirmative defense of good faith is on Defendants. *In re Agric. Research and Tech. Grp., Inc.*, 916 F.2d 528, 535 (9th Cir. 1990); 5 COLLIER ON BANKRUPTCY ¶ 548.09[2][c] at 548-98.2 (16th ed. 2011).

10. Although "good faith" is not defined precisely in case law, at least one court has noted that the absence of good faith is shown by a transferee who knows that a debtor is operating a Ponzi scheme. *See In re Agric. Research*, 916 F.2d at 535 (citing *In re Indep. Clearing House*, 77 B.R. 843, 861 (D. Utah 1987)). The Ninth Circuit has quoted favorably an explanation in an early case that a transferee's "knowledge or actual notice of circumstances sufficient to put him, as a prudent man, upon inquiry as to whether his brother intended to delay or defraud his creditors . . . should be deemed to have notice . . . as would invalidate the sale as to him." *Id.* (quoting *Shauer v. Alterton*, 151 U.S. 607, 621 (1894)).

11. Courts measure good faith by an objective standard, looking to what a transferee "'knew or should have known' in questions of good faith, rather than examining what the transferee actually knew from a subjective standpoint." *Id.* at 536.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 10

12. Under the Bankruptcy Code, Washington's UFTA, as well as relevant case law, the Court does not contemplate a recipient's intent when deciding whether to avoid fraudulent transfers. 5 COLLIER ON BANKRUPTCY ¶ 548.04[2] at 548-63; *Thompson v. Hanson*, 168 Wn.2d 738, 749 (2009). Accordingly, a transfer that constitutes actual fraud is avoided in its entirety unless the transferee establishes that a reasonable person in the transferee's position would not and should not have known of the fraud, not simply whether he or she *actually* acted in good faith.

13. Transfers made by Debtor in furtherance of its Ponzi scheme are transfers made with actual intent to hinder, delay and/or defraud creditors under both state law, RCW Ch. 19.40, and federal law, 11 U.S.C. § 548(a)(1).

14. The Court is mindful that Defendant Colt Johanson did not appear at trial or propose any exhibits to meet his burden of establishing that he acted in good faith when he received payments from Debtor. However, after carefully reviewing the exhibits and testimony, the Court concludes that the preponderance of the evidence establishes that Colt Johanson acted in good faith. Unlike other defendants in related adversary proceedings, there is no evidence that Colt Johanson invested any funds in Debtor, which might have shown that he was aware of factors that made Debtor's business fraudulent. Nor is there evidence that Colt Johanson was involved in recruiting lenders for Debtor or otherwise

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 11

orchestrating the fraudulent aspects of the business. The evidence showed that Colt Johanson was employed by Debtor, and indeed the majority of the transfers that he received were wages.

15. The Court also finds that Colt Johanson gave Debtor reasonably equivalent value for the wages that he received in exchange for employment with Debtor. Although Plaintiff argued at trial that Colt Johanson's pay was unusually high in light of the fact that he was employed by Debtor for only a few months, the evidence showed that his paychecks were comparable to those received by Debtor's other employees. *See* P-91 at 7-8, 10-13. Moreover, a former employee testified that he had seen Colt Johanson at Debtor's workplace, and documentary evidence indicates that federal taxes were withheld from his wages. While Plaintiff speculated at trial that Debtor did not derive reasonably equivalent value from Colt Johanson's services, the evidence indicates that this in fact was a standard employment relationship. The Court concludes that the evidence shows that Colt Johanson met the affirmative defense of good faith as to the **$18,158.99 USD** that he received as wages.

16. However, there is no evidence that Colt Johanson gave reasonably equivalent value for the $800.00 member withdrawal or for the $2,568.06 truck payment. Thus, Colt Johanson has not met the affirmative defense as to **$3,368.06 USD**.

17. There is not sufficient evidence to show that Harold Johanson gave reasonably equivalent value in exchange for the transfers that he received from Debtor.

18. Under RCW 19.40.041(a)(1), RCW 19.40.091(a) and the "strong arm powers" that 11 U.S.C. § 544(b)(1) grants to bankruptcy trustees, all of Debtor's transfers to Defendant Harold Johanson, regardless of the date of transfer, are hereby set aside and avoided.

19. Under RCW 19.40.041(a)(1), RCW 19.40.091(a) and the "strong arm powers" that 11 U.S.C. § 544(b)(1) grants to bankruptcy trustees, Debtor's transfers to Defendant Colt Johanson for the member withdrawal and car payment, totaling **$3,368.06 USD**, regardless of the date of transfer, are hereby set aside and avoided.

20. The Trustee is entitled to claw back and recover the transfers to Defendants, in the amounts described above.

21. The Trustee is entitled to pre-judgment interest at the applicable federal rate from July 21, 2009, when the bankruptcy case commenced.

22. Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Harold Johanson in the amount of $6,122.34 CAD and $1,166.66 USD**, plus pre-judgment interest from

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 13

July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

23.   Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Colt Johanson in the amount of $3,368.06 USD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

24.   The Trustee is entitled to reimbursement of its costs for pursuing this action.

25.   Trustee is awarded all applicable interest, costs and disbursements of this action against each Defendant.

**IT IS SO ORDERED**.

The District Court Executive is directed to enter this Order and to provide copies to counsel and to pro se defendants.

**DATED** this 18th day of November 2014.

          *s/ Rosanna Malouf Peterson*
          ROSANNA MALOUF PETERSON
          Chief United States District Court Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 14